Filed 12/3/15  P. v. Mitchell CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B254321 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA087647) |
| v. | |
| WILLIE LEE MITCHELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alan B. Honeycutt, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Willie Lee Mitchell appeals from the judgment entered following his convictions by jury of second degree robbery, and forgery, with court findings he suffered a prior felony conviction, a prior serious felony conviction, and six prior felony convictions for which he served separate prison terms. (Pen. Code, §§ 211, 470, subd. (d), 667, subds. (a)(1) & (d), & 667.5, subd. (b).) The court sentenced appellant to prison for 19 years four months. We affirm.[1]

### FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*)), the evidence established that on June 10, 2013, Robbin Bridges was in an Inglewood laundromat when appellant robbed her of her purse and its contents, including her "brand new checkbook" and a cell phone. Bridges later obtained a new cell phone that had the phone number of the old phone.

On June 12, 2013, appellant went to a Money Mart located at 3998 South Figueroa in Los Angeles and tried to cash one of Bridges's checks that had been in her purse. The check was Bridges's personal check. The check reflected "**ROBBIN K. BRIDGES**" as the account holder, "Pay to the Order of Willie Mitchell," "$97.65" as the check amount for "Yard Work," the date of June 12, 2013, and the purported signature of "Robbin Bridges." (Some italics omitted.) Appellant gave the check to Susan Ortiz, a Money Mart employee. Appellant wrote his name on the back of the check.

---

[1] On February 19, 2015, appellant, in propria persona, filed in this court a petition for a writ of habeas corpus (case No. B262035). On March 12, 2015, this court ordered that the petition be considered concurrently with this appeal (case No. B254321). The petition will be the subject of a separate order.

Ortiz asked appellant for Bridges's phone number and he provided it. Ortiz contacted Bridges, who said she had been assaulted, and Bridges described appellant. Police summoned to the scene detained appellant. At trial, Bridges denied she signed the check, filled out any information on it, knew Willie Mitchell, or saw appellant before she was robbed. She also denied giving anyone permission to take, fill out, or use the check, and denied giving anyone permission to sign her name.[2]

## ISSUES

Appellant claims (1) there is insufficient evidence supporting his forgery conviction and (2) this court should grant him relief under Proposition 47.

## DISCUSSION

1. *Sufficient Evidence Supports Appellant's Forgery Conviction.*

Penal Code section 470, subdivision (d),[3] states, in relevant part, "Every person who, with the intent to defraud, falsely makes, *alters,* forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery: *any check*, . . ." (Italics added.) We note at the outset there is no dispute as to the sufficiency of the evidence appellant committed a violation of section 470, subdivision

---

[2] Appellant represented himself at trial.

[3] Unless otherwise indicated, subsequent section references are to the Penal Code.

3

(d), except to the extent he argues there was insufficient evidence he "alter[ed]," within the meaning of subdivision (d), a check.[4]

As discussed below, the jury instructions in this case, reasonably understood, presented two main theories of a violation of section 470, subdivision (d). The first was that appellant "alter[ed]," within the meaning of subdivision (d), a check. The second was that he "passed or attempted to use" an altered check. There is no dispute that if appellant "alter[ed]," within the meaning of subdivision (d), a check, there was sufficient evidence he violated subdivision (d) under either or both main theories. Appellant's claim therefore reduces to the issue of whether there was sufficient evidence he "alter[ed]," within the meaning of subdivision (d), a check.

The court gave CALCRIM No. 1906, advising the jury there were two theories of forgery in count 2, i.e., forgery by altering, and forgery by passing or attempting to use.[5]

_____

[4] Appellant does not dispute that the document appellant possessed was a "check" within the meaning of section 470, subdivision (d), or that the "check" was originally a preprinted form without any handwritten information or maker's signature. Nor is there a dispute as to the sufficiency of the evidence of the requisite mens rea or the identification evidence that if someone violated subdivision (d), he was the violator.

[5] CALCRIM No. 1906 stated, in relevant part, "The defendant is charged in Count 2 with forgery of a check. The defendant is being prosecuted for forgery under two theories: (1) that the defendant *forged* the document; and (2) that the defendant *passed or attempted to use* the forged document. [¶] Each theory of forgery has different requirements, . . . [¶] You may not find the defendant guilty of forgery unless all of you agree that the People have proved that the defendant committed forgery under at least one theory. But all of you do not have to agree on the same theory." (Italics added.) The court indicated it would instruct the jury on both theories. In light of those instructions, there is no dispute the relevant two theories of forgery were, as discussed below, forgery by altering a check, and forgery by passing or attempting to use an altered check.

4

The court then gave CALCRIM No. 1904 on forgery by altering. That instruction stated, "The defendant is charged in Count 2 with forgery committed by *altering* a document in violation of Penal Code section 470(d). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant *altered* a check; AND [¶] 2. When the defendant did that act, he intended to defraud. [¶] Someone intends to defraud if he or she intends to deceive another person either to cause a loss of money, or to cause damage to, a legal, financial, or property right. [¶] . . . [¶] It is not necessary that anyone actually be defrauded or actually suffer a financial, legal, or property loss as a result of the defendant's acts. [¶] A person *alters* a document if he or she *adds to, erases, or changes* a part of the document that *affects a legal, financial, or property right*. [¶] The People allege that the defendant altered the following documents: a check from Robbin Bridges' bank account. You may not find the defendant guilty unless you all agree that the People have proved that the defendant *altered* this document." (Italics added.)

Next, the court gave CALCRIM No. 1905, a similar instruction but on forgery by passing or attempting to use an altered check.[6]

Appellant is challenging the sufficiency of the evidence. He is not arguing instructional error. There is no real dispute there was sufficient evidence appellant handwrote, on the front of the check, his name "Willie Mitchell" as payee, "$97.65" as the check amount, the date of June 12, 2013, the purported signature of "Robbin Bridges," and "Yard Work" as the reason for payment. For purposes of CALCRIM Nos. 1904 and 1905, he therefore "add[ed] to" the check. Moreover, having so added to the check, he created a negotiable instrument in the sense that, but for Ortiz's vigilance, she might have cashed the check.

---

[6]     CALCRIM No. 1905, stated, "The defendant is charged in Count 2 with forgery committed by *passing or attempting to use* a forged document in violation of Penal Code section 470(d). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant *passed or attempted to use* an altered check; [¶] 2. The defendant knew that the check was altered; [¶] AND [¶] 3. When the defendant passed or attempted to use the check, he intended that it be accepted as genuine and he intended to defraud. [¶] Someone intends to defraud if he or she intends to deceive another person either to cause a loss of money, or to cause damage to, a legal, financial, or property right. [¶] . . . [¶] It is not necessary that anyone actually be defrauded or actually suffer a financial, legal, or property loss as a result of the defendant's acts. [¶] A person passes or attempts to use a document if he or she represents to someone that the document is genuine. The representation may be made by words or conduct and may be either direct or indirect. A person *alters* a document if he or she *adds to, erases, or changes* a part of the document that *affects a legal, financial, or property right*. [¶] The People allege that the defendant altered the following documents: a check from Robbin Bridges' bank account. You may not find the defendant guilty unless you all agree that the People have proved that the defendant altered this document." (Italics added.)

6

Further, appellant's "add[ing]" to the check, endorsing it, and giving it to Ortiz "affect[ed] a legal, financial, or property right" to the money in Bridges's account. This is so because Ortiz had to determine whether to interfere with that right by cashing the check and, to make that determination, Ortiz contacted Bridges, who effectively protested to Ortiz that appellant had no right to money in Bridges's account. There was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, that appellant committed forgery (count 2). (Cf. *Ochoa, supra,* 6 Cal.4th at p. 1206.)

Appellant argues to the contrary, in essence, as follows. The term "alters" in section 470, subdivision (d) is equivalent to the term "[a]lteration" in California Uniform Commercial Code section 3407, subdivision (a).[7] Such an "[a]lteration" includes a statutorily specified addition(s) in an "incomplete instrument" as the latter term is used in California Uniform Commercial Code section 3407, subdivision (a)(2). The definition of an "[i]ncomplete instrument" in California Uniform Commercial Code section 3115, subdivision (a) requires that that writing be a *signed* writing.[8] California Uniform

---

[7] California Uniform Commercial Code section 3407, subdivision (a) states, " 'Alteration' means (1) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (2) an unauthorized addition of words or numbers or other change to an *incomplete instrument* relating to the obligation of a party." (Italics added.) (" 'Party,' as distinguished from 'third party,' means a person that has engaged in a transaction or made an agreement subject to this code." (Cal. U. Com. Code, § 1201, subd. (b)(26).))

[8] California Uniform Commercial Code section 3115, subdivisions (a) and (c) state: "(a) 'Incomplete instrument' means a *signed* writing, whether or not issued by the signer, the contents of which show at the time of signing that it is incomplete but that the signer intended it to be completed by the addition of words or numbers. [¶] . . . [¶] (c) If words or numbers are added to an incomplete instrument without authority of the signer, there is an alteration of the incomplete instrument under Section 3407." (Italics added.)

Commercial Code section 3115, subdivision (c) indicates the addition, without authority, of words or numbers to an "incomplete instrument" is an "[a]lteration." Therefore, an "[a]lteration" *must* be an addition *after* a writing has been signed.

We reject this argument. Appellant concedes he has found no California case holding an alteration *must* be a change added after a financial instrument has been signed. None of the cases cited by appellant involve a situation where, as here, the defendant forged the entirety of the handwritten information on the check, or, as here, where the defendant forged the maker's signature. Cases are not authority for propositions not considered. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 198.) Nor does appellant cite any case holding the *California Uniform Commercial Code* governs the term "alters" in *Penal Code* section 470, subdivision (d).

California Uniform Commercial Code section 3407, subdivisions (a)(1) and (2) each expressly refers to an "obligation of a party." (See fn. 7, *ante*.) In California Uniform Commercial Code section 3407, subdivision (a)(1), the "obligation of a party" necessarily preexists the "modification" referred to in that subdivision. In California Uniform Commercial Code section 3407, subdivision (a)(2), the "unauthorized addition" referred to in that subdivision relates to an "obligation of a party." In other words, both subdivisions presuppose a preexisting "obligation of a party."[9] However, "It has been

---

[9]     This accords with the Official Comments on California Uniform Commercial Code section 3407. They state, inter alia, "Former Section 3-407 defined a 'material' alteration as any alteration that *changes the contract of the parties* in any respect. Revised Section 3-407 [currently codified in U. Com. Code, § 3407] refers to *such* a change as an alteration." (Official Comments on U. Com. Code, Deering's Ann. Cal. U. Com. Code (1999 ed.) foll. § 3407, p. 455, italics added.)

uniformly established that a forged document is void *ab initio* and constitutes a nullity . . . ." (*Wutzke v. Bill Reid Painting Service, Inc*. (1984) 151 Cal.App.3d 36, 43.)

Accordingly, the check in the present case reflected no preexisting "obligation of a party" with the meaning of California Uniform Commercial Code section 3407, subdivision (a)(1) or (2). Appellant's reliance on California Uniform Commercial Code section 3407, is misplaced.

Further, the record fails to demonstrate which came first, the signature on the front of the check or the other handwritten information on the front. All other handwritten information might have been added *before* the check was signed. Accordingly, the record necessarily fails to demonstrate that the check in this case was a "signed writing, . . . the *contents* of which show *at the time of signing that it is incomplete* but that the signer intended it to be completed by the *addition* of words or numbers" within the meaning of California Uniform Commercial Code section 3115, pertaining to incomplete instruments. Appellant's reliance on California Uniform Commercial Code section 3115 is misplaced.

Finally, a conclusion that a person "alters," within the meaning of section 470, subdivision (d), a check only when the check is signed before the changes are made serves no logical purpose when, as in this case, the signature is forged. For example, California Uniform Commercial Code section 3407, subdivision (a)(2)'s commercial definition of an "[a]lteration" as an unauthorized addition to an incomplete instrument

9

that is a signed writing serves a valid purpose *when the signature is genuine*.[10] When the signature is genuine, a determination of whether a subsequent addition was with authority of the signer or without authority of the signer (and thus an "[a]lteration") impacts the rights and obligations of the parties. But when the signature is forged, any addition is to a document that was already void *ab initio* and could not impact rights or obligations. The fact a change made after a genuine signature *can* be characterized in *commercial* law as an alteration does not mean that in *penal* law all alterations *must* be changes made after a signature even if it is forged.

2. *Appellant's Proposition 47 Arguments Are Premature.*

On February 6, 2014, the court sentenced appellant to prison as previously indicated and, that same day, appellant filed his notice of appeal.

While the appeal was pending, the voters, on November 4, 2014, passed Proposition 47, the Safe Neighborhoods and Schools Act (the Act or Proposition 47). The Act was effective on November 5, 2014. (*T.W. v. Superior Court* (2015) 236 Cal.App.4th 646, 649, fn. 2.) The Act reduced certain drug-related and theft-related offenses that previously were felonies, unless they were committed by certain ineligible defendants. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091.) Among the enumerated offenses set forth in Proposition 47 is "forgery relating to a check" within the

---

[10] We note appellant asserts, for example, "all of the cases cited by [2 Witkin and Epstein, California Criminal Law (4th ed. 2012) Crimes Against Property, section 175, pages. 223-224] to support its three definitions of 'alteration' as it relates to a forgery involve facts in which additions and changes were placed upon a genuine document after it was *signed by an authorized party*." (Italics added.)

10

meaning of section 473, subdivision (b), as added by Proposition 47 (and considered with section 470, subdivision (d)).[11]

The Act also created section 1170.18, which states in relevant part: "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, *473*, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act." (§ 1170.18, subd. (a), italics added.)

Appellant's conviction on count 2 would appear to be eligible under Proposition 47. However, the determination of appellant's eligibility is not so straightforward. Upon the filing of a petition for recall of sentence under Proposition 47, the trial court must also determine whether the petitioner has suffered any disqualifying prior convictions. In addition, even if the defendant is eligible for resentencing, the trial court has the discretion to deny resentencing upon a determination that it "would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

---

[11]     As mentioned, the jury convicted appellant of "forgery" within the meaning of section 470, subdivision (d). That forgery related to a check. The new section 473, subdivision (b), proscribes the punishment for one guilty of "forgery relating to a check."

11

Appellant did not petition the trial court for a recall of his sentence. Rather, he argues that he is not required to do so and can, instead, seek relief under Proposition 47 directly on appeal. Appellant argues that the procedures set forth for recall and resentencing under section 1170.18, subdivision (a) are not exclusive. Rather, he asserts, in part, that because Proposition 47 applies retroactively to cases like his that were not yet final on appeal, he is entitled to have this court resentence him to a misdemeanor on count 2.

This district already has answered the question of whether a defendant can seek relief under Proposition 47 in the appellate court without first filing a petition for recall and obtaining an adjudication in the trial court on the issue of relief.

In *People v. Diaz* (2015) 238 Cal.App.4th 1323 (*Diaz*), Division Four of this district discussed section 1170.18 and whether the appellate court should, under Proposition 47, reduce to a misdemeanor a felony underlying an enhancement, and then strike the enhancement, even though the defendant had not filed a petition in the trial court. (*Diaz*, at pp. 1327-1328, 1330-1331.) Division Four declined the invitation and, instead, rejected the defendant's arguments on appeal as "premature." (*Id.* at p. 1331.) *Diaz* noted that the plain language of section 1170.18 requires the defendant to file first "a petition to recall (if currently serving the sentence) or an application to redesignate (if the sentence is completed) in the superior court of conviction." (*Diaz*, at pp. 1331-1332.) *Diaz* also concluded "the voters did not intend to permit an appellate court to declare in the first instance that a felony conviction for a crime reduced by Proposition 47 is a misdemeanor." (*Id*. at p. 1332.)

12

Other recent decisions similarly have rejected arguments on appeal that appellate courts are required to reduce offenses predating Proposition 47 when the judgments are not yet final, and the decisions instead require defendants to utilize the procedures specified in section 1170.18. (Cf. *People v. Contreras* (2015) 237 Cal.App.4th 868, 873, 889-892; see *People v. Awad* (2015) 238 Cal.App.4th 215, 221-222 [finding the task of reducing a conviction from a felony to a misdemeanor under Proposition 47 "manifestly" vested with the trial court].)

We have found no published case concluding that if, on the effective date of Proposition 47, a defendant is currently serving a sentence for a felony proscribed by a statute later amended under Proposition 47, and the defendant's appeal from the judgment is not yet final, an appellate court should, in the first instance, reduce the felony to a misdemeanor pursuant to Proposition 47 absent the filing first of a petition for recall in the trial court.

We hold that because appellant has not filed a petition as required by section 1170.18, subdivision (a), any arguments on appeal that Proposition 47 should be applied retroactively are premature.[12]

---

[12]    The issue of whether Proposition 47 applies retroactively to a defendant who was sentenced before the Act's effective date but whose judgment was not final until after that date is pending before our Supreme Court in *People v. Dehoyos*, review granted September 30, 2015, S228230.

13

*DISPOSITION*

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



JONES, J. [*]


We concur:



ALDRICH, Acting P. J.



LAVIN, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.